The Honorable Mary Alice Theiler

———— FILED   ———— ENTERED
———— LODGED   ———— RECEIVED

**JUL 27 2018**

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                              DEPUTY

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

  Plaintiff,

  v.

LEO M. DICKERSON,

  Defendant.

No. MJ18-341

COMPLAINT FOR VIOLATIONS

18 U.S.C. § 922(g)(1)

BEFORE the Honorable Mary Alice Theiler, United States Magistrate Judge, United States District Courthouse, Seattle, Washington.

The undersigned complainant being duly sworn states:

## COUNT 1

### *(Unlawful Possession of a Firearm)*

On or about January 31, 2018, in the City of Auburn, within the Western District of Washington, LEO M. DICKERSON, after having been convicted of the following crime punishable by a term of imprisonment exceeding one year:

> Theft in the First Degree, in King County Superior Court, Washington, under cause number 09-8-04133-6, dated on or about February 4, 2010;

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  did knowingly possess, in and affecting interstate and foreign commerce, a firearm, that

2  is: one Heckler & Koch (HK) USP 9mm semi-automatic handgun bearing serial numb

3  24-123895, that had been shipped and transported in interstate and foreign commerce.

4      All in violation of Title 18, United States Code, Section 922(g)(1).

## COUNT 2

### *(Unlawful Possession of a Firearm)*

7      On or about July 17, 2018, in the City of Tacoma, within the Western District of

8  Washington, LEO M. DICKERSON, after having been convicted of the following crime

9  punishable by a term of imprisonment exceeding one year:

10      Theft in the First Degree, in King County Superior Court, Washington,
11      under cause number 09-8-04133-6, dated on or about February 4, 2010;

12  did knowingly possess, in and affecting interstate and foreign commerce, a firearm, that

13  is: one Glock 26 9mm semi-automatic handgun bearing serial number BARU497, that

14  had been shipped and transported in interstate and foreign commerce.

15      All in violation of Title 18, United States Code, Section 922(g)(1).

16      **The undersigned complainant, Benjamin Hughey, being first duly sworn on**

17  **oath, deposes and says:**

## BACKGROUND AND QUALIFICATIONS

19      1.      I am an investigative or law enforcement officer of the United States within

20  the meaning of Title 18, United States Code, Section 2510(7). I am employed as a

21  Detective with the Seattle Police Department ("SPD"), and have been employed with

22  SPD for nineteen years. I am currently assigned to SPD's Gang Unit, and I am a Task

23  Force Officer ("TFO") as part of the Federal Bureau of Investigations Seattle Safe Streets

24  Task Force.

25      2.      I was hired by SPD in 1998. I entered the Washington State Sea-King

26  Academy on September 8, 1998, and graduated in February 1999 with the necessary 880

27  hours of training completed. After completing the mandatory three months of Student

28  Officer Training, I began my career with the SPD East Precinct Patrol Division, and

1 worked in that capacity from 1999 to 2001. From 2001 to 2007, I was assigned to the

2 SPD South Precinct Patrol Division.

3     3.     In my assignment to patrol in both the East and South Precinct areas of

4 Seattle, my duties provided me the opportunity to speak with, and begin initial

5 investigations into crimes committed by, criminals and/or gang members on a daily basis.

6 Specifically, the areas I was assigned to while on patrol were considered gang-

7 affiliated/controlled territories of Seattle with heavy gang activity and populations. Due

8 to the high level of gang activity in the areas I worked, the majority of my proactive

9 police work involved: contacting and interacting with known gang members; keeping

10 track of gang members to include their affiliations, crimes, and trends; conducting crime

11 and gang suppression; and beginning initial investigations into serious felony crimes

12 committed by known gang members.

13     4.     I transferred to the SPD Gang Unit as a detective in March 2007 and

14 became a TFO and member of the FBI Safe Streets Task Force in 2012. As a TFO, I am

15 also deputized by the United States Marshal Service.

16     5.     In my assignment to the Seattle Police Gang Unit, I have continued my

17 interactions with and investigations into known criminals and gang members. As part of

18 my responsibilities within the Gang Unit I routinely conduct uniformed gang suppression

19 patrol in all areas of Seattle, and I am responsible for tracking and identifying criminal

20 street gang members, activities, and gang trends throughout Seattle and King County. My

21 additional responsibilities in the gang unit include being the primary follow-up detective

22 on felony-level crimes committed by gang members in Seattle. These investigations

23 include narcotics sales, illegal possession of firearms, robberies, burglaries, thefts,

24 assaults, shootings, drive-by shootings, prostitution, and working gang related homicides.

25 Additionally, my responsibilities include working as part of the FBI Safe Streets (Gang)

26 Task Force conducting surveillance on gang targets while initiating and participating in

27 short- and long-term gang suppression investigations utilizing informants, undercover

28 surveillance, direct action, and Title III wiretaps.

COMPLAINT/DICKERSON - 3

6.      This Affidavit is made based upon my personal knowledge, training, experience, and investigation, as well as upon information provided to me by and my review of reports prepared by other law enforcement personnel. This Affidavit is made for the purpose of establishing probable cause for this Complaint and thus does not include each and every fact known to me concerning this investigation.

## SUMMARY OF PROBABLE CAUSE - COUNT 1

**A.      The Defendant.**

9.      I am personally familiar with the Defendant, LEO M. DICKERSON, from my time in the SPD Gang Unit.  LEO M. DICKERSON is a member of the 44 Holly Blocc criminal street gang, a south Seattle street gang.  LEO M. DICKERSON goes by the moniker "Baby Leo"

**B.      Arrest of LEO M. DICKERSON and Recovery of a Handgun on January 21, 2018.**

10.     This investigation is memorialized under Seattle Police case number 2018-38181.

11.     From September 2017 through October 2017, Kent Police Detective Eric Doherty conducted multiple related investigations into drive-by shootings and illegal weapons possession within the City of Kent and surrounding areas.  As part of these investigations he viewed the social media profiles of the suspects and their associates.  One of these individuals was D.W., born in 1994.

12.     On October 19, 2017, Detective Doherty viewed D.W.'s "Snapchat story".  A Snapchat story is a running collection of videos and images posted by a user in the previous 24 hours.  D.W. posted a series of videos which depicted himself and friends riding around in a vehicle.  One of the friends was easily recognizable as LEO M. DICKERSON, born in 1996), AKA: "Baby Leo", a 44 Holly Blocc, Crip Squad clique, criminal street gang member. Both Detective Doherty and I are familiar with LEO M. DICKERSON from other investigations and can recognize him from sight.

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101
(206) 553-7970

13.     In the Snapchat story videos, Deshawn and LEO M. DICKERSON can be seen taking turns holding a black 7.62x39mm AK-style pistol, which appears to be a real and functional firearm based upon the following physical characteristics.

14.     The firearm appears to be a Century Arms AK pistol. The weapon has a two-position, receiver mounted, safety lever. It has a leaf-style trunnion mounted rear sight and post-style front sight. The weapon has a Picatinny style quad rail for mounting accessories (like flashlights and optics). At one point in one of the videos, one can see partially down the barrel. It is obvious that the barrel is not plugged and appears consistent with a 7.62x39mm barrel and not an airsoft replica. Airsoft guns have a smaller diameter barrel inserted inside the outer barrel. This allows the airsoft gun to appear from a distance to have a similar diameter barrel to an authentic gun. However, when looking down the barrel of an airsoft gun, the smaller diameter inner barrel is visible. The weapon appears to be equipped with a Bulgarian Circle waffle pattern magazine. In one of the videos, LEO M. DICKERSON has the magazine removed from the gun. He holds the magazine so that the ammunition is visible to the camera, revealing what appear to be live 7.62x39mm rounds. The rounds appear to be steel-cased with full metal jacket copper jacketing, common with imported east-European ammunition. This style of ammunition is inexpensive, easily obtained, and commonly used within the United States with 7.62x39mm firearms. I viewed the same videos and came to the same conclusions as Detective Doherty.

15.     Detective Doherty was able to view these videos on October 19, 2017, just after 1300 hours.   The videos had a graphic overlay on the top left which indicated how long ago they were created and posted. The first set of videos stated "22h ago" and the later set of videos stated "20h ago."

16.     In one of videos of the first set, a residential area is visible out of the window. Based on the houses and other geographic features seen, the location was identified as the 10400 block of Rainier Avenue South, in Seattle, Washington. D.W. is seen holding the AK style pistol in this video. In the second set of videos, the vehicle

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    appears to be stopped in the left-hand turn lane under an underpass of a freeway.  LEO

2    M. DICKERSON is seen holding the AK pistol in these videos.

3         17.    In both sets of videos, LEO M. DICKERSON and D.W. are wearing the

4    same clothing, are in the same vehicle, and possessing the same AK pistol.  Even with the

5    approximate two-hour difference in timing between the first and second set of videos, it

6    would have been impossible for them to have traveled out of Washington state, thus LEO

7    M. DICKERSON possessed the AK pistol within the state of Washington.

8         18.    LEO M. DICKERSON has previously been convicted of the following

9    crime, punishable by imprisonment for a term exceeding one year: Theft in the First

10   Degree, in King County Superior Court, Washington, under cause number 09-8-04133-6,

11   dated on or about February 4, 2010;

12        19.    Detective Doherty memorialized his investigation, and the establishment of

13   probable cause to arrest LEO M. DICKERSON for the crime of RCW 9.41.040,

14   Unlawful Possession of a Firearm, under Kent Police #18-739.

15        20.    On January 31, 2018, Seattle Police Gang Detectives set out to locate LEO

16   M. DICKERSON and arrest him on Detective Doherty's probable cause.  At

17   approximately 1130 hours DICKERSON was located at 1309 M Street SE, Auburn,

18   Washington, 98002.  DICKERSON was seen looking out of the both upstairs and

19   downstairs windows of the residence.  I later learned that this is the current residence of

20   his girlfriend and mother of his child, B.M.  Surveillance was put in place around the

21   residence while an arrest plan was developed.

22        21.    A few minutes before approximately 1515 hours, a blue 1995 Buick

23   LaSabre, Minnesota license plate #028WJN, pulled into the driveway of the residence.  A

24   black female with an approximately two-year-old child exited the vehicle and entered the

25   front door to the residence.  The female's face was never seen by surveillance, thus a

26   positive identification was never made.  At approximately 1515 hours, DICKERSON was

27   seen leaving the residence.  He approached the suspect vehicle on the passenger side.

28   From somewhere within the vehicle, he retrieved a red backpack, consistent with an

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  adult's backpack, that he carried by a single strap.  The backpack was weighted down

2  with unknown object/s, however the weight of the object and the size of the bag would

3  have been consistent with firearms up to and including an AK pistol.

4        22.     After darkness fell, B.M. exited the residence and entered what appeared to

5  be the driver's seat of the vehicle.  DICKERSON got into what appeared to be the front

6  passenger seat.  Neither was in possession of the red backpack detectives had seen earlier.

7  The vehicle was followed to an apartment complex located at 15044 Macadam Rd. S.

8  where both B.M. and DICKERSON exited and walked into an unidentified apartment

9  before arrest teams could move in.

10        23.     At 1930 hours, DICKERSON and B.M. returned to the suspect vehicle with

11  a third individual, B.P..  Arrest teams were called in to make the arrest.  As the arrest

12  teams moved in, they saw that DICKERSON was leaning into the driver's seat area of the

13  suspect vehicle.  B.M. was contacted while seated in the right rear seat of the suspect

14  vehicle and B.P. was contacted in the left rear passenger seat.  When all three were

15  contacted, the vehicle keys were in the ignition and the car was running.

16        24.     Uniformed Gang Unit detectives drove up upon the three, activated their

17  emergency equipment, and exited their vehicles to verbally address the three.

18  DICKERSON looked at the officers and immediately made a furtive movement by

19  reaching towards the driver's center armrest console before he stood out of the car and

20  threw his hands into the air.  The furtive movement greatly concerned the detectives

21  making the arrest, as they knew DICKERSON was wanted for a firearm that had yet to

22  be recovered, and the furtive movement could have been consistent with

23  sloughing/concealing a firearm.  All three individuals were detained by utilizing a high-

24  risk vehicle stop tactics.  DICKERSON was arrested.  During a search incident to arrest,

25  a cellular phone was located in DICKERSON's left front pants.  The phone was seized by

26  detectives and later placed into evidence.

27

28

COMPLAINT/DICKERSON - 7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**DICKERSON looking towards officers and making a furtive movement.**

**Video still from Seattle Police in-car DVR**

25.     Immediately after DICKERSON's arrest, the arresting detectives informed me of DICKERSON's furtive movement and their belief that he may have been sloughing a firearm. The driver's door of the suspect vehicle was left open, and I looked upon the interior of the vehicle while remaining outside of the car.  I saw that the driver's center console was the type that can lift out of the way and tuck back up against the front seat backs, and can also open to reveal a compartment.  Based upon the size of the center console it was clear to me that a firearm could have been concealed underneath, or within, the console.

COMPLAINT/DICKERSON - 8



**Photograph showing the center console**

26.     All three suspects were separated and independently asked who owned the suspect vehicle.  All three denied personally owning the vehicle or to having knowledge of who owned the vehicle.  I asked B.P. and B.M. if they had any personal property in the vehicle that belonged to them.  B.P. admitted that a white Samsung cell phone, which was lying on the left rear passenger seat, belonged to her.  The phone was later confirmed to be hers (via picture on the lock screen and knowledge of the lock code) and returned to her.  B.M. admitted that a child car seat, which was secured into the center rear seat position in the vehicle, belonged to her and was for her child (who was not present).  She admitted that the child's father was DICKERSON and the child's name was J.D.  Both B.P. and B.M. claimed no further property in the vehicle as being theirs.

27.     I later looked at and photographed the car seat which was fully installed into the suspect vehicle.  Both the fact that DICKERSON had the keys in the ignition of the running vehicle, and the fact that he and B.M. had their child seat fully installed into the suspect vehicle, contradicted their statement they did not own the vehicle.

COMPLAINT/DICKERSON - 9



**Photo of car seat installed in suspect vehicle**

28. A record check of B.M. revealed she had outstanding $5050 felony warrant for Organized Retail Theft in the Second Degree. She also had numerous misdemeanor warrants. The felony warrant was verified and she was booked into the King County Jail. The misdemeanor warrants could not be verified as they were good for booking into Kent Jail or SCORE only.

29. B.P. was interviewed and released from the scene.

30. I informed DICKERSON of his Miranda rights, which he invoked. DICKERSON was booked into the King County Jail. Additionally, DICKERSON had two misdemeanor warrants which could not be verified as they were good for booking into Kent jail only.

31. The suspect vehicle was impounded to the Seattle Police processing room pending a search warrant.

32. On February 1, 2018, Superior Court Judge Julie Spector reviewed and signed a search warrant to search the suspect vehicle for firearm and cellular telephone evidence. I executed the warrant on the same day.

33. During the warrant, I recovered or noted two items of dominion and control over the vehicle. One was a pair of 54x32 jeans from the trunk of the vehicle. These jeans are of the size to have belonged to DICKERSON (who is approximately 5'05 tall and weighs 350 pounds). Also, located in the trunk was stuffed animal used as a signed

COMPLAINT/DICKERSON - 10

1  birthday card for DICKERSON.  Numerous people whom I know to be DICKERSON's
2  acquaintances signed the card and wished him a happy birthday.  One person signed the
3  card mentioning that he (DICKERSON) should join the "NRA" (National Rifle
4  Association).  I believe this to possibly be in reference to DICKERSON's possession of
5  firearms.

 

**Size 54x32 jeans and a stuffed animal birthday card from trunk**

34.    Two live .40 caliber bullets were recovered from the driver's center console
area that it appeared DICKERSON had been leaning toward.

35.    Recovered from the right rear passenger floorboards, covered with a piece
of clothing and some trash, was a full-sized Heckler & Kock (HK) USP 9mm semi-
automatic handgun.  The handgun had a 9mm bullet loaded into the chamber ready to
fire.  It also had a 15-round magazine inserted which contained 14 more 9mm bullets of
varying manufacturer.  The firearm bore serial number 24-123895, however a records
check revealed no known registered owner.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970



**HK USP 9mm**                    **Bullets recovered from handgun**

36.     No further cellular phones were seen or recovered.

37.     On February 1, 2018, King County Superior Court Judge Veronica Alicea Galván reviewed and signed a search warrant to extract the cell phone contents of DICKERSON's phone from October 17, 2017 to January 31, 2018. I reviewed the electronic contents seized. From the contents, I saw that DICKERSON is routinely engaged in buying and selling guns via text messages in which he routinely identifies himself by name. There are multiple occurrences of such in his phone data, as detailed below. Of note, not all the data was recoverable from the phone as some messages had deleted portions and some messages were continued via social media apps, which I did not have access to. The data that could be recovered allowed me to put together the following:

a. On November 6, 2017, Leo M. DICKERSON begins a text conversation with XXX-XXX-9897, identified in Leo M. DICKERSON's contacts as "Raymonte." Raymonte asks DICKERSON "What's in the market" and "I just need a lil rocket nothing big," meaning he is looking for a handgun. DICKERSON responds that he is going to look for one. DICKERSON then sends Raymonte a photo of a possible Browning Hi Power (possible 9mm) handgun. Raymonte asks how much, and DICKERSON responds $400.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1
2
3
4
5
6
7
8



**Browning Hi Power**

9
10
11
12
13
14
15
16

b.  On November 20, 2017, DICKERSON ("cripsquadd" on Snapchat) has a Snapchat conversation with "dherbo03". dherbo03 asks DICKERSON to find him a "glizzy" (slang for GLOCK). dherbo03 also sends DICKERSON a picture that was marked as "missing file" by DICKERSON's phone and asks DICKERSON to find someone to buy it. During the conversation, DICKERSON ask how much and dherbo03 says $250. dherbo03 also says he is willing to do a trade. DICKERSON agrees to trade dherbo03 a Ruger (a handgun) and get paid $250 for the trade. DICKERSON also asks if dherbo03's is a .380 (caliber). dherbo03 responds that it is a 9 (mm). dherbo03 informs DICKERSON that he would rather keep his than do the trade.

17
18
19
20

c.  Also on November 20, 2017, DICKERSON reaches out to XXX-XXX-0947. DICKERSON had no contact information for this phone number. During the short conversation, the other party sends DICKERSON a picture of a Kel-Tec P-11 9mm handgun with an extended magazine. DICKERSON asks to purchase the gun for $250 immediately.

21
22
23
24
25
26
27
28



**Kel-Tec P-11**

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

d. On the same date, DICKERSON searches the internet for "how to clean DNA off bullets" and "what happens if I dip a bullet in bleach".

e. On November 22, 2017, DICKERSON receives a text from XXX-XXX-0152, identified as "Timmy" in DICKERSON's contacts. Timmy sends DICKERSON a picture of a handgun (appears to be a Beretta 92) with an extended magazine lying on his lap. On November 25, 2017, Timmy texts DICKERSON, "You tryna get this 9". Based upon the texts it appears as if Timmy is trying to sell DICKERSON a Beretta 92 9mm.



**Beretta 92 (or similar)**

f. On November 25, 2017, dherbo03 and DICKERSON have another conversation about DICKERSON no longer having a 40 caliber, but now being in possession of a 9mm Smith and Wesson.

g. On December 4, 2017, DICKERSON searches the internet for "how can I find out if my firearm is stolen."

h. On December 11, 2017, DICKERSON is texting XXX-XXX-2186, identified as "Duke" in DICKERSON's contacts. At one point DICKERSON inquires how to purchase all three. DICKERSON then asks what Duke wants for the Smith (S&W handgun). Duke responds $350. Duke then texts DICKERSON a picture of three guns, what appears to be a Smith and Wesson 453 9mm handgun, a AMT Backup .380 caliber semi-auto, and a Smith and Wesson revolver. This appears to be the "three" DICKERSON was asking about earlier in the conversation.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970



**S&W 453 (top), AMT Backup (bottom left),
and a S&W revolver (bottom right)**

i. On December 13, 2017, DICKERSON sends the picture of the three handguns to a
   new contact for unknown reasons.

j. On January 4, 2018, DICKERSON is trying to broker a deal to sell a Kimber
   (unknown 9mm or .45 caliber) handgun to another person for $500 dollars.
   DICKERSON receives the picture of the handgun from XXX-XXX-1350 and then
   sends the picture to XXX-XXX-9878, identified as "Mondo" in his contacts.
   DICKERSON attempts to sell the Kimber for $500, but "Mondo" counters for
   $450.



**Kimber**

k. On January 8, 2018, DICKERSON receives a text from XXX-XXX-1350, who
   sends him a picture of a shotgun (possibly a Remington 870 12-gauge) lying next
   to his leg in a vehicle for unknown reasons.

COMPLAINT/DICKERSON - 15

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970



**Remington 870 (or similar)**

l. On January 14, 2018, DICKERSON texts a picture of a Mac-10/11 type handgun to XXX-XXX-9878.  The picture appears to be of the gun lying a wood floor common in residential homes.



**Mac-10 or 11**

m. On January 18, 2018, DICKERSON has a conversation with "Dwayne" at XXX-XXX-0787.  DICKERSON asks for the picture and Dwayne sends him two pictures of a Springfield XD handgun.   They have a conversation about meeting up and share an address to meet.

**Springfield XD**

COMPLAINT/DICKERSON - 16

n.  Throughout DICKERSON's cell phone internet search history, DICKERSON researches guns, the prices of guns, the locations of gun stores, shooting ranges, high capacity magazines for handguns, and ammunition.

38.     On February 2, 2018, Superior Court Judge Julie Spector reviewed and signed a search warrant to search DICKERSON's address at 1309 M Street SE #A, in Auburn, Washington.  The warrant was executed: however, DICKERSON, who was released on his own recognizance pending a second appearance for Detective Doherty's investigation, was not home at the time of the search warrant.  No firearms were located during the search.  However, a fully loaded 30-round magazine for a 5.56 caliber rifle (AR-15 style) was located, along with a fully loaded 31-round high-capacity 9mm Glock handgun magazine and a loaded 10-round standard capacity Glock 9mm handgun magazine.

 

**AR-15, high capacity 9mm, and standard 9mm magazines.**
**Pictured on right is the AR-15 magazine loaded.**

39.     The recovered Heckler & Kock USP 9mm handgun was submitted for latent print analysis (pending).  DNA samples were obtained from the handgun and retained for future testing.

40.     On July 24, 2018, Alcohol, Tobacco, and Firearms (ATF) Special Agent Catherine Cole, who has received specialized training in the recognition and identification of firearms and ammunition and their plaice of manufacture, reviewed the photographs and information on the recovered Heckler & Kock USP 9mm handgun bearing serial number 24-123895.  She determined that it is a firearm according to 18

COMPLAINT/DICKERSON - 17

1  U.S.C. § 921(a)(3), and that it was not manufactured in the state of Washington.  Thus,

2  the firearm must have traveled in/or affected interstate or foreign commerce in order to be

3  found in Washington.

4      41.    Based upon the facts of described above, LEO M. DICKERSON was in

5  possession of a firearm that had traveled across state lines, was loaded with a 15-round

6  magazine, and his possession was illegal based upon his felony conviction history.

7  <center>**SUMMARY OF PROBABLE CAUSE - COUNT 2**</center>

8  **A.    DICKERSON's Arrest and Recovery of a Handgun on July 17, 2018.**

9      42.    This investigation is memorialized under Seattle Police case number 2018-

10  263739.

11      43.    After his January 31, 2018 arrest, Leo M. DICKERSON was released from

12  jail pending trial.  DICKERSON failed to appear at court for his arraignment.  On March

13  8, 2018, King County Superior Court Judge John Chun issued a felony $5050 failure to

14  appear warrant for DICKERSON's arrest.  This warrant was issued under King County

15  Superior Court cause number 18-1-00373-0 SEA.

16      44.    On July 6, 2018, King County Superior Court Judge Jim Rogers issued a

17  felony $100,000 warrant for the arrest of DICKERSON for Eluding a Police Vehicle.

18  The warrant was issued under King County Superior Court cause number 18-1-02815-5

19  SEA.

20      45.    On July 17, 2018, detectives from the SPD Gang Unit and deputies from

21  the United States Marshals Service conducted an operation to locate and arrest

22  DICKERSON for his two felony warrants.  Based upon DICKERSON's history,

23  detectives and deputies were briefed that there was a likelihood that DICKERSON would

24  be armed with a firearm at the time of his arrest.

25      46.    At approximately 1810 hours, DICKERSON was observed walking in a

26  parking lot of an apartment complex at 10740 17th Avenue South, in Tacoma,

27  Washington.  DICKERSON was walking alone with no other people visible anywhere in

28  his vicinity.  Arrest teams moved in and made verbal contact with DICKERSON.  The

COMPLAINT/DICKERSON - 18

1   arrest teams were all wearing full Police markings and operating vehicles equipped with
2   red and blue flashing lights.  Detective Lilje, of the SPD Gang Unit, exited his vehicle as
3   one of the arrest team members and yelled, "Police!  Stop!"  Detective Lilje heard at least
4   one other Detective/Deputy yell the same thing.  DICKERSON turned to look at
5   Detective Lilje, then turned again and jogged approximately 5 feet away.  DICKERON
6   had a plaid backpack in his hand, which he threw into the air.  The bag landed on top of
7   and near the edge of a nearby carport roof.  Detective Lilje heard a loud thud as it landed
8   on the roof, causing him to believe the bag contained a heavy object.  Immediately after
9   throwing the backpack away LEO M. DICKERSON stopped, held his hands out to his
10  sides, and followed commands.  He was taken into custody without further incident.

11          47.     DICKERSON was read his Miranda rights and stated that he understood
12  them.  He was asked what was in his backpack, and he declined to answer by saying,
13  "I'm not talking to you.  Don't ask me any more questions."  No weapons were found on
14  his person during a search incident to his arrest.  Per SPD Policy, detectives and officers
15  cannot leave unsecured prisoner property in an area where it may be subject to damage or
16  theft while a prisoner is in Police custody. DICKERSON would not speak to
17  Detectives/Deputies and did not identify anyone with whom he would like to leave the
18  backpack.  Because of this, his backpack was recovered from the roof by
19  Detectives/Deputies for safekeeping.

20          48.     Both DICKERSON and the backpack were taken to the SPD Headquarters
21  building while paperwork was completed to book him into King County Jail for his
22  warrants.  The backpack was not opened prior to taking it to the SPD Headquarters
23  building.  At SPD Headquarters, the contents of the backpack were inventoried prior to
24  placing it into safekeeping.  This is required by SPD Policy and it is an important step to
25  prevent the unintentional introduction of flammable, toxic, explosive or otherwise
26  dangerous items, live animals, perishable items, or other prohibited items into the
27  evidence storage area without anyone's knowledge.  It is a standard procedure that all
28  SPD officers and detectives perform prior to placing any container into safekeeping,

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  evidence, or the King County Jail prisoner property.  If no dangerous or otherwise

2  prohibited items are found, the property is placed into safekeeping in the evidence unit.

3  Small items that fit inside pockets can accompany an arrestee to jail.

4      49.    Detective Lilje opened the backpack to conduct his mandatory inventory

5  search.  When he opened the backpack, he could see that it contained a pistol with a high-

6  capacity drum magazine inserted into the magazine well.  Detective Lilje immediately

7  recognized the handgun as a Glock model 26, 9mm pistol.  The drum magazine was very

8  large and appeared to Detective Lilje to be the type capable of holding 50 rounds of 9mm

9  ammunition.  This is an unusually large magazine size and based on the apparent weight

10  of the backpack, Detective Lilje estimated that the magazine was full, or nearly full of

11  ammunition.  Detective Lilje could also see two more standard capacity Glock

12  magazines, with ammunition protruding from the top, within the backpack.  The

13  backpack also appeared to contain some glass jars with suspected marijuana and several

14  clear plastic bags.



**Picture of the contents of the backpack as Detective Lilje saw them upon opening**

25      50.    Detective Lilje sealed the backpack based upon the discovery of the

26  illegally possessed firearm.  Detective Lilje applied for a search warrant to recover the

27  pistol and search for additional firearms evidence in the backpack.  The warrant was

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 approved and issued electronically by King County Superior Court Judge Sean
2 O'Donnell.

3     51.     Detective Lilje executed his warrant and recovered the handgun with the 50-
4 round drum magazine and two additional magazines.  While packaging the items for
5 evidence, Detective Lilje found that the Glock 26, serial number BARU497, was loaded
6 with a bullet in the chamber.  Additionally, the inserted drum magazine contained 50
7 additional rounds of 9mm ammunition.   The two other magazines recovered were of a
8 standard capacity and contained 14 and ten rounds of 9mm respectively.

 

**Pictures of the recovered items as found, and unloaded**

17     52.     The firearm, magazines, and ammunition were placed into evidence with a
18 request for fingerprints.

19     53.     On July 26, 2018 ATF Special Agent Catherine Cole, who has received
20 specialized training in the recognition and identification of firearms and ammunition and
21 their plaice of manufacture, reviewed the photographs and information on the recovered
22 Glock model 26, 9mm handgun bearing serial number BARU497.  She determined that it
23 is a firearm according to 18 U.S.C. § 921(a)(3), and that it was not manufactured in the
24 state of Washington.  Thus, the firearm must have traveled in/or affected interstate or
25 foreign commerce in order to be found in Washington.

26     54.     Based upon the facts of described above, DICKERSON was in possession
27 of a firearm that had traveled across state lines, was loaded with 50-round magazine, and
28 his possession was illegal based upon his felony conviction history.

COMPLAINT/DICKERSON - 21

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

## CONCLUSION

2       55.    Based on the aforementioned facts, I believe that LEO M. DICKERSON

3 committed the crime of Felon in Possession of a Firearm (two counts), in violation of

4 Title 18, United States Code, Section 922(g)(1).

5

6

7                         Benjamin Hughey, Task Force Officer

8                         Federal Bureau of Investigation

9        Based on the Complaint and Affidavit sworn to before me, and subscribed in my

10 presence, the Court hereby finds that there is probable cause to believe the Defendant

11 committed the offenses set forth in the Complaint.

12

13        DATED this 27th day of July, 2018.

14

15

16

17                         The Honorable Mary Alice Theiler

18                         United States Magistrate Judge

19

20

21

22

23

24

25

26

27

28

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101
(206) 553-7970